# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:20-CV-083-DCK

| | |
|---|---|
| SHARON COFFEY BRUCE, | ) |
| Plaintiff, | ) |
| | ) **ORDER** |
| v. | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 16) and Defendant's "Motion For Summary Judgment" (Document No. 18). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be denied; that Defendant's "Motion For Summary Judgment" be denied; and that the Commissioner's decision be vacated and this matter be remanded for further consideration.

## I. BACKGROUND

Plaintiff Sharon Coffey Bruce ("Plaintiff" or "Bruce"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On or about December 6, 2016, Plaintiff filed an application for a period of

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew M. Saul as Defendant in this action.

disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning April 10, 2015. (Transcript of the Record of Proceedings ("Tr.") 213). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on March 27, 2017, and again after reconsideration on June 23, 2017. (Tr. 134-142, 144-151). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 144).

Plaintiff filed a timely written request for a hearing on August 6, 2017. (Tr. 16, 152-153). On March 27, 2019, Plaintiff appeared and testified at a hearing before Administrative Law Judge Mary Ryerse (the "ALJ"). (Tr. 16, 36-76). In addition, Lauren Calderon, a vocational expert ("VE"), and Young Yim, Plaintiff's attorney for the administrative hearing, appeared at the hearing. Id. at Tr. 16.

The ALJ issued an unfavorable decision on June 17, 2019, denying Plaintiff's claim. (Tr. 13-31). On July 12, 2019, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on April 24, 2020. (Tr. 1-6, 10-12, 36-76). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1-6, 36-76).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on June 25, 2020. (Document No. 1). The parties consented to Magistrate Judge Jurisdiction on February 5, 2021 and this case was reassigned to the undersigned as presiding judge. (Document No. 11).

"Plaintiff's Motion For Summary Judgment" (Document No. 16) and Plaintiff's "Memorandum Of Law In Support Of Plaintiff's Motion For Summary Judgment" (Document No. 17) were filed April 21, 2021; and "Defendant's Motion For Summary Judgment" (Document No. 18) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 19) were filed June 21, 2021. Plaintiff filed her "Reply Memorandum In Further Support Of Plaintiff's Motion For Summary Judgment" (Document No. 20) on July 2, 2021.

The pending motions are now ripe for review and disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as

3

a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.  DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between April 10, 2015 and December 31, 2017, the latter of which is Plaintiff's date last insured. 42 U.S.C. § 423(a)(1)(A) (indicating that individuals must be insured for disability insurance benefits to be entitled to such benefits); see (Document No. 17, p. 2, n.1). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 29-30).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since at least April 10, 2015, her alleged disability onset date. (Tr. 19). At the second step, the ALJ found that lumbar spine degenerative disc disease; fibromyalgia; bilateral carpal tunnel syndrome status post bilateral release; Hashimoto's syndrome; major depressive disorder; attention deficit disorder ("ADD"); anxiety disorder; agoraphobia; and obesity were severe impairments.[2] (Tr. 19). At the third step, the ALJ determined that Plaintiff did not have an

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 20).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work activity, with the following limitations:

> [Plaintiff] is limited to standing/walking up to six hours in an eight hour day and sitting up to six hours in an eight hour day. She requires the option to alternate between sitting for thirty minutes and standing for thirty minutes throughout the day. She can occasionally climb, balance, stoop, kneel, crouch, and crawl. She can frequently, but not constantly handle and finger bilaterally. She must avoid working at unprotected heights. She is limited to performing simple routine tasks, not at a production rate pace. She is limited to maintaining concentration, persistence, and pace for two-hour periods during the workday. She is limited to interact occasionally with supervisors, coworkers, and the public. She is limited to a stable work environment, which means few and infrequent changes to the work routine. She cannot work in an environment where there are crowds, such as at a stadium, a school, or a theater.

(Tr. 22). In making her finding, the ALJ specifically stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform her past relevant work as a sales clerk. (Tr. 28-29). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 29). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a photocopy machine operator, a router, and a collator operator. (Tr. 29-30). Therefore, the ALJ concluded that Plaintiff was not under a

"disability," as defined by the Social Security Act, at any time between April 10, 2015, and the date last insured, December 31, 2017. (Tr. 30).

Plaintiff on appeal to this Court makes the following assignments of error: (1) "the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Plaintiff's residual functional capacity;" and (2) "the ALJ failed to properly evaluate Plaintiff's subjective statements." (Document No. 17, p. 4). The undersigned will discuss each of these contentions in turn.

**A.     Assignment of Error # 1**

In the first assignment of error, Plaintiff argues that the ALJ failed "to properly weight the medical opinion evidence and failed to properly determine Plaintiff's residual functional capacity." Id. Plaintiff primarily based her argument about the deficiency of the ALJ's analysis on the opinion of her treating physician, Dr. Howell. According to Plaintiff, Dr. Howell had treated Plaintiff "every 3 to 6 months since 2012, for chronic low back pain, depression with anxiety, hypertension, anemia, and Hashimoto's thyroiditis." Id. at p. 6. Plaintiff argued that Dr. Howell's "diagnoses and assessment" were supported by "the results of lumbar spine x-rays and [an] MRI." Id. at pp. 6-7. The physical symptoms of her diagnoses included "constant, severe lower back pain with burning radiation to the left hip and leg, and left leg numbness precipitated and/or aggravated by standing, sitting, and walking, left foot tingling, and falling." Id. at p. 7. Dr. Howell apparently indicated that Plaintiff "is not a malingerer." Id. Dr. Howell gave the following limitations upon Plaintiff's ability to work an eight-hour day, each of which, he said, were limitations that would have been present since April 9, 2015:

> Ms. Bruce could sit for less than 1 hour, stand and/or walk for less [than 1] hour, and that she must get up every 10 minutes when sitting and move around for 5-10 minutes before returning to a seated position…She could occasionally lift 10 pounds and carry 5

7

> pounds…Plaintiff could never rarely use the upper extremities to grasp, turn, and twist objects or use the hands/fingers for fine manipulations bilaterally…Ms. Bruce's symptoms were frequently severe enough to interfere with her attention and concentration. During an 8-hour workday, Plaintiff would need to take unscheduled breaks to rest every 15 minutes, each break lasting 10 minutes…Dr. Howell estimated Ms. Bruce would be absent from work more than three times a month, as a result of her impairments or treatment.

Id.

### i. Physical Limitations

According to Plaintiff, the ALJ erroneously gave her treating physician's opinion "regarding [her] physical impairments" insufficient weight. Id. at p. 10. This was error, Plaintiff alleges, because there was ample clinical support for Dr. Howell's opinion, including "imaging studies[,]…MRI and x-rays of the spine, as well as clinical evidence," including evidence from physical exams, of her back and leg pain. Id. at p. 11. Plaintiff also argues that the ALJ's conclusion "that Dr. Howell's opinions are inconsistent with evidence that Ms. Bruce engages in some activities of daily living" is incorrect. Id. at p. 12. She contends that "[t]here is no evidence Plaintiff engaged in any activities that contradict the specific limitations identified by the treating doctor nor that indicate she can perform a full-time job." Id.

Plaintiff contends that since Dr. Howell was Plaintiff's treating physician, his opinion "should have been given controlling weight," particularly absent "substantial evidence[] contradicting" Dr. Howell's opinion. Id. at p. 12 (citing 20 C.F.R. § 404.1527(c)(2)). Even if not assigned *controlling* weight, Plaintiff argues, Dr. Howell's opinion should have been given the "most" weight given a variety of factors: (1) "Dr. Howell treated Ms. Bruce regularly throughout the period at issue;" (2) "the nature of the treatment focused on Plaintiff's disabling physical impairments with referrals to appropriate specialists and for testing, as well as attempts at multiple modalities of treatment;" (3) "Dr. Howell cited to evidence supporting his opinions;" and (4) Dr.

8

Howell's findings "are consistent with the longitudinal treatment records." Id. at p. 13. Instead of applying the multi-factored analysis laid out in the regulations to determine what weight to give Dr. Howell's opinion (if not given controlling weight), the ALJ, Plaintiff argues, "disregard[ed]" these factors. Id. Instead, her articulation of Plaintiff's RFC was, Plaintiff contends, absent any "narrative discussion of any evidence, medical or non-medical, that supports the physical RFC found for Ms. Bruce." Id. at p. 14.

In response, Defendant argues that the ALJ did not give controlling weight to Dr. Howell's opinion because "it was not consistent with the medical record in general." (Document No. 19, p. 6). The ALJ noted that in the records from Dr. Howell's examination, there was no indication of "palpable spasms; she had an intact sensation in the examined joints, and a normal gait, strength, reflexes, and lumbar twisting and side bending." Id. at pp. 6-7. Furthermore, Defendant argues that the ALJ noted that "her cervical spine x-ray showed no abnormalities and a lumber spine x-ray showed only mild osteoarthritis." Id. at p. 7. These records were from Dr. Howell's "own treatment notes," and as such, his "findings support[ed] the light exertional level," rather than the more restrictive limitations on Plaintiff's capacity to work that Dr. Howell suggested. Id. Defendant argues that it was thus proper for "the ALJ [to give] his opinion little weight." Id.

The Fourth Circuit follows the treating physician rule, "which requires that ALJs give controlling weight to a treating physician's opinion on the nature and severity of the claimant's impairment if that opinion is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the record." Triplett v. Saul, 860 F. App'x 855, 863 (4th Cir. 2021) (internal quotations and citations omitted). Conversely, where "a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."

9

Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The weight assigned to a treating physician's opinion that is not entitled to *controlling* weight is determined by reference to the factors enumerated in 20 C.F.R. § 404.1527(c)(2)(i)-(6). See Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 384-85 (4th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2)(i)-(6)). Those factors include: (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) "[s]upportability," that is, more weight will be assigned to a physician's opinion that "presents relevant evidence," such as "medical signs and laboratory findings," to support the opinion; (4) "[c]onsistency" of the opinion "with the record as a whole;" (5) "[s]pecialization" of the physician rendering the opinion – that is, if the opinion is rendered in the area of the physician's specialty, more weight will be assigned the opinion; and (6) any other factors that "tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(2)(i)-(6).

Here, the undersigned finds that "substantial evidence supports the ALJ's decision to not give *controlling* weight to the medical opinion" of Dr. Howell. Dowling, 986 F.3d at 385. The ALJ reasonably concluded that Dr. Howell's opinion was inconsistent with other substantial evidence in the record. Dr. Howell's opinion that Ms. Bruce can "sit for less than one hour, [] stand or walk for less than an hour," and can "never handle and finger with her bilateral hands" is inconsistent with medical examinations that show far less restriction on Ms. Bruce's physical capabilities. The ALJ noted that "medical examinations generally showed no palpable spasms, she had an intact sensation in the examined joints, and a normal gait, strength, reflexes, and lumbar twisting and side bending." (Tr. 27); see (Tr. 974, 1082).

Nonetheless, despite the undersigned's agreement with "the ALJ's conclusion that [Dr. Howell's] medical opinion was not entitled to controlling weight, it does not follow that the ALJ

10

had free reign to attach whatever weight to that opinion he deemed fit." Dowling, 986 F.3d at 385. Although the ALJ was "not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he [or she] meaningfully considered *each* of the factors [from 20 C.F.R. 404.1527(c)(2)(i)-(6)] before deciding how much weight to give the opinion." Id. The ALJ does not mention or make reference to these factors, which was an error. By simply stating without explanation that she "g[a]ve little weight to [Dr. Howell's] opinion," the ALJ committed error. (Tr. 26). This result requires remand, as at least some of the factors from the regulation cut in Ms. Bruce's favor. See Triplett, 860 F. App'x at 865.

### ii. Mental Limitations

With respect to the mental aspects of Plaintiff's RFC, Plaintiff contends that the ALJ erred by not affording the opinion of her treating psychiatrist, Dr. Onyeagoro, controlling weight. (Document No. 17, p. 20). According to Dr. Onyeagoro, Ms. Bruce's mental limitations were "moderate-to-marked," indicating that her mental health symptoms were of an intensity such that they interfered with "her ability to (1) maintain attention and concentration for extended periods; (2) perform at a consistent pace without rest periods of unreasonable length or frequency; and (3) travel to unfamiliar places or use public transportation." Id. at p. 16. Apparently, the ALJ gave "'substantial weight' to the opinions from a one-time examining psychologist [Dr. Sinclair]…and to opinions provided by two non-examining state agency psychologists." Id. Ms. Bruce's treating psychiatrist, by contrast, was given only "some weight." Id. Plaintiff argues that "[i]n contrast to the opinions from the non-treating consultants, the opinions from treating psychiatrist Dr. Onyeagoro are based on appropriate medical findings documented over a long period of treatment." Id. at p. 20. Controlling weight should have been given to Dr. Onyeagoro's opinion,

11

Plaintiff contends, or at least *some* weight analyzed under the appropriate factors. Id. at pp. 20-21.

Furthermore, Ms. Bruce alleges that it was error for the ALJ to conclude "that Dr. Onyeagoro's opinions conflict with [Plaintiff's] limited activities of daily living." (Document No. 17, p. 17). Plaintiff argues that "a claimant's ability to engage in some modest activities of daily living on a sporadic basis is not inconsistent with a finding of disability…[which is] even more true in the context of mental impairments." Id.

Defendant responds by noting that Plaintiff's argument that the ALJ failed to consider the factors from the regulation in determining how much weight to assign to Dr. Onyeagoro's opinion "is without merit." (Document No. 19, p. 9). According to the Commissioner, "it is well established that an explicit discussion of each factor is not required." Id. Although Plaintiff suggests that the ALJ essentially failed to give reasoning for why he weighted the opinion of Dr. Onyeagoro – the treating psychiatrist – less than the opinions of other doctors, Defendant contends that the ALJ provided ample explanation of why Dr. Onyeagoro's opinion was only "somewhat consistent with the medical record in general." Id. at p. 8. Defendant contends that the ALJ considered the following evidence in the medical record:

> The ALJ determined that medical examinations showed periods where Plaintiff had a depressed mood, a dysphoric affect, and her intelligence was estimated to be in the low average range. However, medical examinations generally showed she did not exhibit any significant cognitive impairment. She was also alert and oriented, was appropriately dressed, and had good hygiene. She also maintained good eye contact, she had a calm, cooperative, and pleasant attitude, and she had a normal psychomotor activity, mood, and affect. Further, her speech was fluid, coherent, and clear, her thought process was linear, her insight and judgment were intact, and her memory was within normal limits. In addition, Plaintiff reported that she watches TV, and she goes out shopping at least once a week. As such, the ALJ found that these findings are reasonably consistent with the assessed limitations, except that

12

> Plaintiff can interact occasionally with supervisors, coworkers, and the public.

Id. Overall, Defendant contends that Plaintiff asks the Court to do an impossible task under the law: "that this court reweigh the evidence," for in Plaintiff's view, "the ALJ should have weighted [the] evidence [in the record] differently." Id. at p. 10.

As with Dr. Howell's opinion, the undersigned finds that the ALJ was entitled to deviate from the treating physician rule by not giving Dr. Onyeagoro's opinion controlling weight, as her opinion was inconsistent with other substantial evidence in the record. The ALJ correctly noted that although Ms. Bruce was noted to have had times of "a depressed mood, [and] a dysphoric affect," medical examinations "generally showed she did not exhibit any significant cognitive impairment," and "her thought process was linear, her insight and judgment were intact, and her memory was within normal limits." (Tr. 27); see (Tr. 408-14). However, just as with Dr. Howell's opinion, the ALJ failed to explain why she only gave "some weight" to Dr. Onyeagoro's opinion, as required by the regulations. (Tr. 27). "In failing to acknowledge and apply each of [the] six factors [from 20 C.F.R. 404.1527(c)(2)(i)-(6)], the ALJ erred." Dowling, 986 F.3d at 385. This error requires remand.

**B.     Assignment of Error # 2**

Next, Plaintiff argues that "the ALJ failed to properly evaluate Plaintiff's subjective statements." (Document No. 17, p. 4). The ALJ stated in her decision that she found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23). In Plaintiff's view, this conclusion was "fatally flawed." (Document No. 17, p. 24). Plaintiff contends that "the ALJ placed undue weight on Ms. Bruce's activities of daily

13

living and her interpretation of the clinical and objective medical evidence." Id. Plaintiff gives two main reasons for why, in her belief, the ALJ erred. First, the ALJ, in Plaintiff's view, erroneously required objective evidence to substantiate her statements about the severity of her symptoms – which, Plaintiff argues, is not required. Id. (citing Lewis v. Berryhill, 858 F.3d 858, 869-70 (4th Cir. 2017)). Second, Plaintiff contends that "the ALJ placed undue weight on Ms. Bruce's activities of daily living and her interpretation of the clinical and objective medical evidence." (Document No. 17, p. 24).

### i. Objective Evidence

Defendant argues in response that the ALJ followed the two-step process laid out in the regulations.[3] The regulations mandate "a two-step process for evaluating an individual's symptoms." SSR 16-3P, 2016 WL 1119029, at *3 (Mar. 16, 2016). The first step in that process involves "determining whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms." Id. Then, the second step involves an evaluation of "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult or to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI disability claim." Id. at *2. Notably, the regulation speaks to the role of objective evidence in the analysis: "we will not disregard an individual's statements about the

---

[3] The parties seem to dispute which regulation the Court should apply in its analysis: SSR 16-3p or SSR 96-7p. See (Document No. 19, p. 12, n.2); (Document No. 20, pp. 5-6). Although the difference between the two regulations in this case does not affect the Court's analysis, the undersigned notes that Plaintiff is correct. SSR16-3p applies to the Court's analysis, as it specifically states that it supersedes and rescinds SSR 96-7p and applies to ALJ decisions "on or after March 28, 2016." SSR16-3P, 82 Fed. Reg. 49462-03, 49462 (Oct. 25, 2017). The rule even states that "[w]hen a Federal court reviews our final decision in a claim…we expect the court to review the final decision using the rules that were in effect at the time we issued the decision under review." Id. at 49462-63; see also Lemmonds v. Berryhill, 2017 WL 2864850, at *5, n.6 (W.D.N.C. July 5, 2017) (same). The ALJ decision in this case was issued on June 17, 2019. (Tr. 31).

14

intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *5. Objective evidence, then, or lack thereof, is "one of the *many* factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." Id. (emphasis added).

The Fourth Circuit, however, takes a narrower view of the role of objective evidence – particularly in fibromyalgia cases. According to the Fourth Circuit, "ALJs may not rely on objective medical evidence (or the lack thereof)—*even as just one of multiple factors*—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 97 (4th Cir. 2020) (emphasis added). Indeed, "disability claimants are entitled to rely *exclusively* on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. at 98 (emphasis added).

The undersigned finds that the ALJ "applied the improper legal standard when evaluating objective medical evidence to discount Plaintiff's fibromyalgia." Bryson v. Berryhill, 2021 WL 2517682, at *5 (W.D.N.C. June 18, 2021). Here, the ALJ found that fibromyalgia was one of Plaintiff's severe impairments,[4] and the ALJ took into account Plaintiff's testimony that "she experiences pain all over, mostly in her back," and "[p]rolonged sitting makes her uncomfortable

---

[4] Although this issue does not appear to be in dispute, the fact that Plaintiff was not formally diagnosed with fibromyalgia until after the date last insured – December 31, 2017 – does not affect any analysis by an ALJ on this issue. See (Tr. 17); (Document No. 20 (Plaintiff admits that she was was not diagnosed with fibromyalgia until after the date last insured)). According to the Fourth Circuit, "[m]edical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI [date last insured]." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). In other words, a hypothetical finding that Plaintiff was disabled on the basis of her severe impairment of fibromyalgia would be legitimate, so long as it was considered a severe impairment prior to the date last insured and met the duration requirement. See 42 U.S.C. § 423(d)(1)(A).

15

with pain; she has to get up for twenty to thirty minutes to walk around or just to change position." (Tr. 19, 23). The ALJ went on, however, to state that Ms. Bruce's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23). According to the ALJ, the determination of Plaintiff's RFC was based on the ALJ's notation that "medical examinations generally showed…normal…lumbar twisting and side bending," and a "[c]ervical spine X-ray showed no abnormalities," in addition to "[a] lumbar spine X-ray [that] showed only mild osteoarthritis." (Tr. 23). The undersigned concludes that reliance on these objective sources of evidence are precisely the kinds of evidence that the Fourth Circuit has stated in Arakas are inappropriate for an ALJ to consider when evaluating "a claimant's subjective complaints regarding symptoms of fibromyalgia…that does not produce such evidence." 983 F.3d at 97. Indeed, reliance on objective medical evidence, "even as just one of multiple factors," is legally erroneous. Id. Since these errors potentially "caused the ALJ to improperly assess the claimant's" RFC, the decision should be remanded. Bryson, 2021 WL 2517682, at *9.

  **ii. Activities of Daily Living**

Plaintiff contends that the ALJ erred in placing too much weight on Ms. Bruce's activities of daily living in evaluating Ms. Bruce's complaints of her pain. (Document No. 17, p. 24). Plaintiff contends that her activities of daily living do not indicate that "she can perform a full-time job on a sustained basis, 8 hours a day, 40 hours a week." Id. at p. 12. Defendant, by contrast, argues that the ALJ did consider "her ability to carry out the daily activities based on [her] limitations[,] and the Court is not left to guess" how the RFC was determined. (Document No. 19, p. 12).

16

The Court notes that the "Fourth Circuit has stated that when an ALJ considers a claimant's daily activities as evidence of disability, the ALJ 'may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them.'" Bryson, 2021 WL 2517682, at *6 (citing Arakas, 983 F.3d at 99). Furthermore, "the ALJ must provide an explanation as to how particular activities show Plaintiff can persist through an eight-hour workday." Bryson, 2021 WL 2517682, at *6 (citing Arakas, 983 F.3d at 100).

Here, although the ALJ seemed to rely substantially on Plaintiff's ability to "watch[] TV, attempt[] to read, walk[] in the yard, and [go] out shopping at least once a week," it is not clear that the ALJ considered the limitations on Plaintiff's ability to perform such activities. (Tr. 25). For instance, there was also evidence that Plaintiff could only "help with cleaning and doing dishes" on "a good day," and for 90% of the time, her daughter was doing the cooking. (Tr. 23). Furthermore, she was only able to "drive for about twenty minutes comfortably," and "[h]er husband has to dress her three to four times a week." Id. Plaintiff "cannot watch and focus on a TV program for longer than fifteen minutes because of pain." Id.

As in Bryson, it is not clear that the ALJ, as required by the Fourth Circuit, considered Plaintiff's limitations on performing her activities of daily living, such as the substantial amount of help that she needed from her husband and daughter to perform basic personal hygiene and household tasks and the breaks needed to complete even simple chores. 2021 WL 2517682, at *7. The ALJ further failed to explain how Plaintiff's performance of certain activities of daily life show that she can work an eight-hour day. Therefore, the ALJ "did not rely on substantial evidence in evaluating Plaintiff's daily activities." Id.

17

## IV. CONCLUSION

Based on the analysis above, the undersigned finds that this matter should be remanded for further consideration. The undersigned finds that there is not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence does not support the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will direct that the Commissioner's decision be vacated.

**IT IS, THEREFORE, ORDERED** that: Plaintiff's "Motion For Summary Judgment" (Document No. 16) is **DENIED**; the "Defendant's Motion For Summary Judgment" (Document No. 18) is **DENIED**; and the Commissioner's determination is **VACATED**. This matter shall be **REMANDED** for reconsideration consistent with this Order.

**SO ORDERED**.

Signed: March 30, 2022

David C. Keesler
United States Magistrate Judge